UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| HABER LAND CO. LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-04091-JMS-MJD |
| | ) | |
| AMERICAN STEEL CITY INDUSTRIAL | ) | |
| LEASING, INC., | ) | |
| CATERPILLAR GLOBAL MINING, LLC, | ) | |
| GE ENGINE SERVICES - UNC HOLDING I | ) | |
| INC, | ) | |
| LUCAS-FERMAT LLC, | ) | |
| MOSEY REAL ESTATE, INC., | ) | |
| MOSEY MANUFACTURING CO. INC., | ) | |
| ALD INDIANA, LLC, | ) | |
| GENERAL RECOVERY RECYCLING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY

According to Haber Land Co. Ltd.'s ("Haber") Amended Complaint in this matter, Haber

acquired farmland in 2012 in Indiana. The Indiana Department of Environmental Management

("IDEM") inspected the property and observed foundry waste and coal product. A subsequent

hazardous waste assessment revealed PCB contamination. Haber's lawsuit seeks to hold various

predecessor owners of and operators on the property responsible for the contamination under the

Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and a

variety of state-law theories. Two such defendants, Mosey Manufacturing Co. Inc. ("Mosey") and

Caterpillar Global Mining, LLC ("Caterpillar"), have filed motions to dismiss Haber's complaint

for failure to state a claim. [Filing No. 42; Filing No. 50.] For the most part, the motions, and in

particular Caterpillar's motion, demand far more of Haber than is required by the Federal Rules of

Civil Procedure. Caterpillar has also filed a Motion to Dismiss Cross-Claims, arguing that because

Haber's CERCLA claim fails, the Cross-claimants' derivative claims must fail as well.  [Filing No. 118.]  For the reasons described below, the Court **DENIES** Mosey's Motion to Dismiss, **GRANTS IN PART** and **DENIES IN PART** Caterpillar's Motion to Dismiss, and **DENIES** Caterpillar's Motion to Dismiss Cross-Claims.

## I.
### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim that does not state a right to relief.  The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).  In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff.  *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).  A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The Court may not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief.  *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level."  *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

## II.
### BACKGROUND

Consistent with the standard set forth above, the Court recites the relevant facts as detailed in Haber's Second Amended Complaint.[1]  The complete web of property owners, operators, and successors in interest is detailed in the Second Amended Complaint, though just a few pieces of the web are relevant to Mosey and Caterpillar's motions.

The property Haber purchased in Richmond, Indiana in September 2012 to use as farmland for crops was previously part of a larger parcel called the NATCO Site.  [Filing No. 122 at 3.] Before the Bucyrus-Erie Company purchased the NATCO Site in November 1956, the Site had been used as farmland.  [Filing No. 122 at 3.]  The Bucyrus-Erie Company used the Site for drill manufacturing until it was purchased by another company in 1960.  [Filing No. 122 at 3-4.] Caterpillar eventually acquired the Bucyrus-Erie Company.[2]  [Filing No. 122 at 4.]

In April 1991, Mosey acquired the NATCO Site.  [Filing No. 122 at 4.]  At the time, another company (for which Defendant Lucas-Fermat LLC is successor in interest) was lessee of a portion of the NATCO Site, which it used for a machine shop and call center.  [Filing No. 122 at 5.]  In July 1994, Mosey sold the NATCO Site to another Defendant called Mosey Real Estate, Inc., [Filing No. 122 at 5], against whom default has been entered, [Filing No. 89].

In 2011, Mosey, along with Defendants Mosey Real Estate, Inc. and ALD Indiana, LLC, demolished buildings on the NATCO Site, including the "NATCO building," which contained

---

[1] Because the Second Amended Complaint did not alter Haber's claims but instead identified a new defendant, rather than deny the movants' motions to dismiss as moot, the Court has applied the motions to Haber's most recent complaint.  *See, e.g.*, *Baker O'Neal Holdings, Inc. v. Ernst & Young LLP*, 2004 WL 771230, at *3 (S.D. Ind. 2004) (Hamilton, J.).

[2] For the sake of clarity, the Court will refer to the Bucyrus-Erie Company as "Caterpillar," which is the Defendant in this matter.

PCBs, and disposed of waste from the NATCO Site.[3]  [Filing No. 122 at 7.]  The Defendants also dumped or released coal ash, industrial waste, and PCBs on the NATCO Site, including on the property eventually acquired by Haber.  [Filing No. 122 at 8.]  Caterpillar used heavy manufacturing machines containing PCBs.  [Filing No. 122 at 7.]  Transformers containing PCBs were removed from the NATCO Site at some point by one of the Defendants.  [Filing No. 122 at 7.]

In summer 2014, after Haber acquired its portion of the NATCO Site, IDEM inspected Haber's property and identified foundry waste and coal product, none of which was generated by Haber.  [Filing No. 122 at 6.]  IDEM required Haber to further investigate and dispose of the hazardous waste.  [Filing No. 122 at 6.]  In response, Haber hired an environmental consultant to perform an investigation, which determined that there was cinder and coal-ash waste and PCB contamination which predated Haber's purchase of its property.  [Filing No. 122 at 6.]  IDEM and the EPA have directed Haber to remediate the PCB contamination on its property.  [Filing No. 122 at 6.]

Haber thereafter notified the Defendants and the EPA of its intent to sue for Defendants' actions in contaminating its property.  [Filing No. 122 at 8.]  Haber brought suit in this Court on December 31, 2018, [Filing No. 1], and on May 2, 2019, filed its currently-operative Second Amended Complaint, [Filing No. 60].  The Second Amended Complaint alleges six counts against each Defendant; Haber's trespass claim, which both movants sought to dismiss, was previously dismissed by stipulation.  [Filing No. 81.]  Remaining are claims under the Indiana Environmental

---

[3] PCBs, or polychlorinated biphenyls, are heavily-regulated "toxic chemicals that remain highly stable in the environment for a long time and are known to cause a host of health problems, including birth defects and cancer, in both animals and humans."  *United States v. NCR Corp.*, 688 F.3d 833, 836 (7th Cir. 2012).

Legal Actions statute, Ind. Code § 13-30-9-1 *et seq.* (Count I); Indiana's nuisance statute, Ind. Code § 32-30-6-6 *et seq.* (Count II); CERCLA, 42 U.S.C. § 9607 (Counts III and IV); the illegal dumping provision of Indiana Code section 13-30-3-13 (Count V); and the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2619 (Count VI). [Filing No. 122.]

On March 6, 2019, Mosey filed its Partial Motion to Dismiss as to Count II of Haber's remaining claims. [Filing No. 42.] On March 8, 2019, Caterpillar filed its Motion to Dismiss, seeking to dismiss all of Haber's claims against it. [Filing No. 50.] Both motions to dismiss are fully briefed. The Cross-claimants have not yet responded to Caterpillar's Motion to Dismiss Cross-Claims, [Filing No. 118], but as Caterpillar's Motion explains, its motion seeks to dismiss the crossclaims for contribution under the CERCLA and is wholly dependent upon the Court finding Haber's CERCLA claim to be deficient. The Court can assess the sufficiency of Haber's CERCLA claim based upon the parties' briefing on the Motions to Dismiss, which will also resolve the merits of Caterpillar's Motion to Dismiss Cross-Claims. All three pending motions are therefore ripe for decision.

### III.
### DISCUSSION

Caterpillar's arguments fall generally into two categories. The first is comprised of fundamentally legal arguments—namely, that Haber's nuisance, illegal dumping and TSCA claims fail as a matter of law and would fail as a matter of law regardless of the detail Haber may add to its complaint. Mosey's argument, applicable just to Haber's nuisance claim, also falls into this first category.

The second includes pleading arguments. Caterpillar broadly contends that Haber has missed the mark in pleading plausible claims against it.[4]

The Court begins by addressing the legal arguments directed against Haber's nuisance, illegal dumping, and TSCA claims before turning to the alleged pleading issues in Haber's Second Amended Complaint.

## A. Nuisance

Both movants contend that Haber cannot maintain a nuisance claim based upon a prior landowners' actions, relying primarily on district court cases interpreting Indiana law. [Filing No. 43 at 5-7; Filing No. 43 at 15-16.] Mosey additionally argues that Haber's claim fails because there is presently no nuisance to abate or enjoin. [Filing No. 43 at 7.]

In response, Haber clarifies that its nuisance claim is based upon the Defendants' ownership and maintenance of a nuisance on the adjoining land—specifically, on the larger NATCO Site, of which Haber's property is only one portion. [Filing No. 77 at 3-7; Filing No. 78 at 16-20.]

The movants reiterate their arguments in reply and emphasize that a nuisance claim is unavailable because they owned the NATCO Site and engaged in the alleged conduct years before Haber acquired its portion of the property. [Filing No. 91 at 3-8; Filing No. 92 at 14-16.]

---

[4] Caterpillar also argued in its initial brief that the Court should strike Haber's Amended Complaint as improperly filed, [Filing No. 51 at 2], before appropriately recognizing in its reply brief that any issue has been resolved by Haber receiving leave to file an amended pleading, [Filing No. 92 at 1].

Finally, Caterpillar incorrectly contends that the Court would lack supplemental jurisdiction over Haber's state-law claims against it were Haber's federal-law claims to be dismissed as against Caterpillar. [Filing No. 51 at 13.] Unless Haber's federal-law claims were dismissed as against *all* Defendants, supplemental jurisdiction over the state-law claims against Caterpillar would remain appropriate under the supplemental jurisdiction statute. 28 U.S.C. § 1367(a) ("[S]upplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.").

Notwithstanding the insight provided by the federal courts' interpretation of Indiana law, the Indiana Supreme Court (whose caselaw is binding as to Haber's state-law claims, *see BMD Contractors, Inc. v. Fid. & Deposit Co. of Maryland*, 679 F.3d 643, 648 (7th Cir. 2012)) counsels that the Court's "first task when interpreting a statute is to give its words their plain meaning." *J.D.M. v. State*, 68 N.E.3d 1073, 1077 (Ind. 2017) (internal quotation omitted). This guidance dictates that the Court begin with the text of the nuisance statute:

> Whatever is:
>> (1) injurious to health;
>> (2) indecent;
>> (3) offensive to the senses; or
>> (4) an obstruction to the free use of property;
> so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action.

Ind. Code § 32-30-6-6. Section 7 provides: "An action to abate or enjoin a nuisance may be brought by any person whose: (1) property is injuriously affected; or (2) personal enjoyment is lessened; by the nuisance." Ind. Code § 32-30-6-7(a). Finally, section 8 provides: "If a proper case is made, the nuisance may be enjoined or abated and damages recovered for the nuisance." Ind. Code § 32-30-6-8.

The movants' arguments raise several issues. The first is a pleading issue; Mosey contends that Haber's claim for maintaining a nuisance on neighboring portions of the NATCO Site is inconsistent with its Revised Amended Complaint.[5] [Filing No. 91 at 4-6.] As Mosey highlights, Haber alleges that "Defendants illegally dumped and disposed of" hazardous materials "on the NATCO Site, including the Haber field." [Filing No. 60 at 7.] Mosey wants the Court to read this

---

[5] At times the movants are criticize Haber for clarifying its nuisance claim. Such criticism is misplaced. *Cf., e.g., Perry v. Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000) ("Motions under Rule 12(b) serve to clarify a plaintiff's complaint by forcing the plaintiff, under penalty of dismissal, to state in plain and concise terms a claim under which relief could be granted.").

allegation to provide that, because Defendants dumped on Haber's property, it did not maintain a nuisance on the neighboring portions of the NATCO Site. Such a reading is not only contrary to the Rule 12(b)(6) standard, which requires that reasonable inferences be drawn in Haber's favor, but it is also unnatural. The better reading is that Defendants dumped waste on many parts of the NATCO Site, including the portion Haber did not purchase, such that Defendants maintained a nuisance on the adjoining parcels which impacted Haber's enjoyment of its own parcel.

This reasonable reading of Haber's Revised Amended Complaint takes it out of the realm of the line of persuasive (but not binding, *see Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)) district court authority holding that "a buyer of property may sue a prior owner for nuisance based on activities undertaken on the same property and alleged to have harmed the same property." *Lilly Indus., Inc. v. Health-Chem Corp.*, 974 F. Supp. 702, 708 (S.D. Ind. 1997); *Sanyo N. Am. Corp. v. Avco Corp.*, 2008 WL 2691095, at *7 (S.D. Ind. 2008) (granting motion to dismiss because "a current landowner" cannot sue a "prior landowner for past hazardous waste contamination" on a nuisance theory). The Indiana courts have at least twice acknowledged this line of authority and declined to weigh in. *Reed v. Reid*, 980 N.E.2d 277, 293 (Ind. 2012) ("The Defendants primarily rely on two unreported Southern District of Indiana cases [including *Sanyo*] which contain some dicta in this regard, but which addressed an entirely different question than the one presented here."); *Elkhart Foundry & Mach. Co. v. City of Elkhart Redevelopment Comm'n for City of Elkhart*, 112 N.E.3d 1123, 1131 (Ind. Ct. App. 2018), *trans. denied*, 2019 WL 1200087 (Ind. Mar. 4, 2019) ("We need not address . . . the *Lilly Industries* rationale."). Here, however, Haber has plausibly alleged that the movants' conduct on the neighboring parcels, which were once part of the larger NATCO Site, caused contamination on its own property. This squarely places Haber's claim within the rule announced in *Gray v. Westinghouse Electric Corp.*, 624

N.E.2d 49, 51-54 (Ind. Ct. App. 1993), where the Indiana Court of Appeals held that a plaintiff stated a viable nuisance claim against Westinghouse after it contaminated the plaintiff's property by disposing of PCBs at a dump next to the plaintiff's house. Haber's allegations that the movants contaminated its property by disposing of hazardous materials on the neighboring parcels fits solidly within this paradigm.

The movants' final argument is that Haber's nuisance claim fails because there is no ongoing nuisance that can be abated, primarily relying upon *KB Home Indiana Inc. v. Rockville TBD Corp.*, 928 N.E.2d 297, 305-08 (Ind. Ct. App. 2010). *KB Home* held in part as follows:

> Notwithstanding our decision in *Gray* acknowledging that a party causing the nuisance can be held liable regardless of whether the party owns or possesses the property on which the nuisance originates, we did not discuss the effects of the dumping of contaminants that began prior to the plaintiff's occupation of the adjacent land or the fact that the dumping had ceased more than 23 years before the plaintiff initiated his nuisance claim.
> . . .
> [T]he designated evidence showed that Rockville's contamination of the property [adjoining the land eventually purchased by KB] ceased in 1993 and it sold the property to a subsequent purchaser. Thus, under these circumstances, KB has failed to show that a nuisance existed or was ongoing that could be abated or enjoined. Put another way, the damage has already been done, and KB's cause of action against Rockville sounds in negligence. As a result, we conclude that the trial court properly granted Rockville's motion for summary judgment on KB's nuisance claim against it.

*Id.* at 307-08.

The *KB Home* decision is difficult to square with the Indiana Court of Appeals' pronouncement in *Gray*, 624 N.E.2d 49, which the *KB Home* court acknowledged but did not meaningfully distinguish. As noted, the *Gray* plaintiffs alleged that Westinghouse disposed of PCBs at a dump near their house. *Id.* at 52. Westinghouse dumped the chemicals from 1957 to 1962, and further "failed to abate the nuisance" in 1976 after learning of the PCB contamination. *Id.* The plaintiffs brought suit in April 1985. *Id.* Westinghouse's primary argument was that it

could not be held liable because it did not own or control the dump, where the nuisance was located. *Id.* at 52. The Indiana Court of Appeals resoundingly rejected this argument: "Although most nuisance cases refer to the controversy as being between two landowners, it is because this is the norm, not because the law requires either party to be a landowner." *Id.* at 53. After setting forth the text of the nuisance statute, unchanged since 1881, the court held:

> The statute focuses on an individual's right to enjoy property free from interference, without making a distinction as to the ownership, license or tenancy status of either party. Further, the statute uses the broad term "whatever" to define the possible sources of a nuisance and it does not contain any reference to property ownership by the party creating the nuisance. This indicates the focus of the legislature was on protecting an individual's right to enjoy property from infringement by any source.

*Id.* The court also rejected two arguments that at least implicitly underlie the movants' position in this case. First, the court rejected Westinghouse's argument that whether the PCB contamination was abatable could be determined on the pleadings. *Id.* ("[W]hether the nuisance is abatable at all is a question of fact."). Second, and most critically, the court held that "[a] plaintiff may still recover damages for nuisance which is found to be unabatable"—in other words, a nuisance action need not be predicated upon an abatable condition. *Id.*; *see also Reed*, 980 N.E.2d at 293 (emphasizing that the sole elements of a nuisance claim "are whether the Defendants' actions caused a condition on [the plaintiffs'] property which was: (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property").

In *KB Home*, the Court of Appeals distinguished *Gray* in one sentence, noting that *Gray* arose in a different factual context. 928 N.E.2d at 307. As in this case, the *KB Home* plaintiff did not occupy or own the land adjacent to the nuisance at the time of the dumping, which had ceased years before. *Id.* But the *KB Home* court did not provide any analysis, explanation, or reason for

why this factual distinction matters, instead stating: "A nuisance claim generally contemplates an action that is designed to cease or lessen the defendant's continued offensive behavior." *Id.* at 307. The *KB Home* court thus concluded that the plaintiff could not maintain a claim because it "failed to show that a nuisance existed or was ongoing that could be abated or enjoined. Put another way, the damage has already been done, and KB's cause of action against Rockville sounds in negligence." *Id.* at 307.

This conclusion—that the plaintiff could not maintain a nuisance action because there was no ongoing nuisance—does not in any way flow from the factual distinction the court drew from *Gray*—that the plaintiff did not own the property at the time of the alleged dumping. Simply put, the supposedly material distinction about the plaintiff in *KB Home* not owning the property at the time of the dumping is dictum. *KB Home*'s actual reason of decision rests entirely upon the lack of an ongoing or abatable nuisance. That holding is wholly unreconcilable with the holding in *Gray* that a plaintiff may maintain a nuisance action for damages even where the nuisance is not abatable. And given the broad wording of the nuisance statute and the Indiana Supreme Court's recognition that the nature of the parties' ownership interests is generally irrelevant to a nuisance action, *cf. Reid*, 980 N.E.2d at 293 (citing *City of Gary v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1232 (Ind. 2003), and *Gray*, 624 N.E.2d at 53), the Court finds unpersuasive *KB Home*'s perfunctory and ultimately unnecessary distinction between plaintiffs who own the property at the time of the polluting activity and those who later acquire the property, *cf. Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002) (holding that federal courts, in interpreting state law, may reject decisions of intermediate appellate courts "when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court").

One consideration that seemed to underlie the *KB Home* decision was the procedural posture of the case. The case had to be remanded for trial on the plaintiff's negligence claim, premised upon the same alleged contamination which gave rise to the nuisance claim. 928 N.E.2d at 307 ("Put another way, the damage has already been done, and KB's cause of action against Rockville sounds in negligence."). A plausible reading of the Court of Appeals' decision is that it wanted to avoid duplicative causes of action, all while the plaintiff would be limited to a single recovery. A similar situation may well play out in this matter as it progresses; at this time, Haber has alleged myriad legal theories, many essentially seeking damages for a single injury. Discovery, too, will shed light on which theories are truly viable. But for present purposes, where (unlike *KB Home*) the matter is before the Court under the accommodating Rule 12(b)(6) standard, the Court concludes that Haber has plausibly stated its nuisance claim. The Court therefore **DENIES** the movants' Motion to Dismiss as to that claim.

### B. Illegal Dumping

Caterpillar next argues that Haber has not stated a claim for relief under Indiana's illegal dumping statute because Haber did not own the property at the time of the allegedly illegal dumping and because the statute was passed after it sold the NATCO site and does not apply retroactively. [Filing No. 51 at 17-19.] In response, Haber does not meaningfully engage with Caterpillar's arguments, but instead attempts to distinguish the cases upon which Caterpillar relies. [Filing No. 77 at 20-22.]

Indiana's illegal dumping statute provides in relevant part:

(d) A landowner on whose land garbage or other solid waste has been illegally dumped without the landowner's consent may, in addition to any other legal or equitable remedy available to the landowner, recover from the person responsible for the illegal dumping:

(1) reasonable expenses incurred by the landowner in disposing of the garbage or other solid waste; and

(2) reasonable attorney's fees.

Ind. Code § 13-30-3-13.  Caterpillar's argument regarding contemporaneous ownership rests on the statutory requirement that the illegal dumping occur "without the landowner's consent."[6] Several district court opinions have agreed with this argument; as one explained:

> Given the statute's language, how could future landowners give or not give consent to illegal dumping in the past? To grant future, undetermined owners of the Richmond Site who did not consent to the past illegal dumping the right to sue under the Illegal Dumping Statute would be illogical and contrary to the plain language of the statute.

*Sanyo*, 2008 WL 2691095, at *4; *see Wickens v. Shell Oil Co.*, 2006 WL 3254544, at *5 (S.D. Ind. 2006) ("Plaintiffs did not own the property at the time the tank began leaking, which is another fact precluding recovery under Indiana Code § 13-30-3-13.").

The Court need not resolve whether contemporaneous ownership with the alleged dumping is necessary, *cf. W. Ohio Pizza, Inc. v. Clark Oil & Ref. Corp.*, 704 N.E.2d 1086, 1093 (Ind. Ct. App. 1999) (acknowledging argument but instead addressing other dispositive grounds), nor whether the statue applies retroactively, because Haber has pleaded itself out of court with respect to this claim.  According to Haber's Second Amended Complaint, Caterpillar conducted its alleged dumping while Caterpillar owned the entire NATCO Site, including the parcel which Haber eventually purchased.  [*See* Filing No. 122 at 3-4.]  Haber cannot plausibly allege that Caterpillar illegally dumped on its own property without its own consent.  The Court therefore **GRANTS** Caterpillar's Motion to Dismiss as to Haber's illegal dumping claim.

---

[6] In contrast to the illegal dumping statute, conspicuously absent from the nuisance statute is any similar language suggesting that property ownership may be relevant to the nuisance analysis.

### C.  Toxic Substances Control Act

Caterpillar next argues that Haber's TSCA claim fails because any alleged contaminating activity by Caterpillar's corporate successors took place before the TSCA was enacted in 1976. [Filing No. 51 at 11.]  Caterpillar additionally argues that the TSCA permits suits only to enjoin ongoing violations.  [Filing No. 51 at 11.]

In response, Haber argues that the TCSA is a remedial statute, such that it should apply retroactively.  [Filing No. 78 at 12.]  Haber further argues that its claim targets an ongoing violation because "[t]he contamination remains in the ground and still must be remediated."  [Filing No. 78 at 14.]

In reply, Caterpillar argues that the TCSA is not a remedial statute in the same vein as CERCLA and does not apply in this case.  [Filing No. 92 at 9-12.]

The TSCA contains a citizen-suit provision which provides, in relevant part, as follows:

> [A]ny person may commence a civil action . . . —
>> **(1)(A)** against any person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter . . . .
>
> . . . The district court shall have jurisdiction . . . to enforce the permit, standard, regulation, condition, requirement, prohibition, or order, referred to in paragraph (1)(A) . . . .

42 U.S.C. § 6972(a).  Leaving aside the retroactivity issue, the TSCA allows a plaintiff to bring suit only against a person "alleged to be in violation" of the provisions and regulations of the TSCA.  § 6972(a)(1)(A).  The Seventh Circuit has held that, unlike other statutes "which authorize[] mandatory injunctions to compel remediation of previous violations, TSCA authorizes only prohibitory injunctions to stop ongoing violations."  *Liebhart v. SPX Corp.*, 917 F.3d 952, 961 (7th Cir. 2019); *see Mair v. City of Albany*, 303 F. Supp. 2d 237, 242-43 (N.D.N.Y. 2004) ("[T]he past abatement activities of defendants have been 'completed,' and cannot therefore be

considered 'ongoing' so as to come within the scope of the TSCA. . . . [T]he TSCA authorizes only the restraint, or stoppage, of ongoing activities.").

Haber "agrees" with Caterpillar that its "ownership of the [NATCO] Site pre-dates TSCA," and thus appears to concede that any contaminating activities have long concluded. [Filing No. 92 at 12.] Yet Haber also contends that "the release of PCBs at the Haber Field is a continuing violation" because the "contamination remains in the ground and still must be remediated." [Filing No. 92 at 14.] This conflates a continuing violation of the TSCA with the continuing effects of that violation. Haber does not ask the Court to enjoin some ongoing activity, but instead asks the Court to require Caterpillar to pay to address the consequences of its completed activities. *Compare Gray*, 624 N.E.2d at 53 (holding that "whether the nuisance is abatable," even when arising from the ceased activity of dumping hazardous waste, "is a question of fact" under Indiana law). That type of relief is not available under the TSCA. *See Liebhart*, 917 F.3d at 961. The Court therefore **GRANTS** Caterpillar's Motion as to Haber's TSCA claim.

### D. Pleading Issues

As noted at the outset, Caterpillar's Motion largely demands far more from Haber's Complaint than do the federal pleading standards. The remainder of Caterpillar's arguments fall in this category and are summarily addressed below.

#### 1. CERCLA

Caterpillar argues that Haber has failed to plead facts to support its CERCLA claim, failed to plead facts to show that it has incurred reimbursable costs, and failed to establish that its cost-recovery claim is timely. [Filing No. 51 at 5-11.]

Because Caterpillar's quibbles with Haber's pleading largely turn on facts that Caterpillar believes are missing, the Court only briefly sets forth an overview of CERCLA—a statute which

the Seventh Circuit has observed "is not known for its clarity, or for its brevity," *Bernstein v. Bankert*, 733 F.3d 190, 200 (7th Cir. 2013) (citing *Exxon Crop. v. Hunt*, 475 U.S. 355, 363 (1986)). "But its purpose, at least, is straightforward: the act was designed to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Id.* (citing *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009)). The statute provides that various "potentially responsible parties" (PRPs, as they are known) may be held "strictly liable for . . . 'any . . . necessary costs of response incurred by any other person consistent with the national contingency plan.'" *Id.* at 201 (quoting 42 U.S.C. § 9607(a)(4)(B)). At trial, Haber will have to establish that "(1) the site in question is a 'facility' as defined by CERCLA; (2) the defendant is a responsible party; (3) there has been a release or there is a threatened release of hazardous substances; and (4) the plaintiff has incurred costs in response to the release or threatened release." *Sycamore Indus. Park Assocs. v. Ericsson, Inc.*, 546 F.3d 847, 850 (7th Cir. 2008). For now, all Haber must do is allege sufficient factual matter "to give [the defendants] fair notice of each of [its] claims 'and the grounds upon which they rest.'" *Rowlands v. United Parcel Serv. – Fort Wayne*, 901 F.3d 792, 800 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (alterations omitted). Courts in the Seventh Circuit have consistently rejected any higher pleading standard for CERCLA cases. *See, e.g.*, *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421 n.7 (7th Cir. 1994) ("We decline, however, to adopt the pleading particularity requirements [in the CERCLA context.]") (collecting authorities); *City of Gary v. Shafer*, 683 F. Supp. 2d 836, 862 (N.D. Ind. 2010) ("CERCLA does not contain any heightened pleading requirements."); *City of Waukegan v. Nat'l Gypsum Co.*, 587 F. Supp. 2d 997, 1007 (N.D. Ill. 2008) (same).

Against this backdrop, it is clear that Caterpillar demands far too much. First, Caterpillar argues that the Court "should rule Haber's remaining allegations insufficient to state a claim that rises above speculation and bare plausibility" because Haber has not pleaded any "non-conclusory factual allegations regarding disposal of a hazardous substance by Bucyrus, Caterpillar's predecessor-in-interest." [Filing No. 51 at 6-7.] Of course, as Haber points out, plausibility is precisely the standard Haber's pleadings must meet. Here, Haber's Second Amended Complaint alleges (to take just one example) that Caterpillar operated "heavy manufacturing machines on the NATCO Site which contained PCBs," [Filing No. 122 at 7], and "dumped, disposed of, and released PCBs at the Haber Field," [Filing No. 122 at 12]. These are factual allegations—not legal conclusions—regarding what Caterpillar's corporate predecessor allegedly did while it owned and operated a factory on what is now Haber's property. The fact that Caterpillar allegedly used machines containing PCBs strengthens the plausibility of its other factual allegations that Caterpillar disposed of or otherwise released the PCBs onto the property. In short, these factual allegations are more than adequate to yield the reasonable inference that Caterpillar disposed of hazardous substances on the property. The information regarding "who, what, when, and where" Haber seems to request—and which would be required under a heightened pleading standard, such as required in a fraud case, *see* Fed. R. Civ. P. 9(b)—is simply not required at the pleading stage, and must await discovery.

Similarly, Haber easily crosses the plausibility threshold in alleging that it has incurred costs "consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). For one, "plausibility" does not "require a complaint to contain facts matching all statutory 'elements,'" *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017), as Caterpillar appears to insinuate. But even if Haber were required to allege facts to match the requirement that it incur

costs "consistent with the national contingency plan," Haber has alleged that it has performed remediation at the direction of IDEM. [Filing No. 122 at 6.] For purposes of pleading, this is adequate. *Cf. NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 791 (7th Cir. 2000) (finding adequate evidence of compliance with national contingency plan where "[t]he Illinois EPA approved NutraSweet's clean-up plan, and the agency monitored the progress of the remediation" and "NutraSweet remediated its property until the Illinois EPA advised it that it could stop"); 40 C.F.R. § 300.700(c)(3)(i) ("A private party response action will be considered 'consistent with the [national contingency plan]' if the action, when evaluated as a whole, is in substantial compliance with the applicable requirements . . . , and results in a CERCLA-quality cleanup."). As stated above, Caterpillar will have ample opportunity to conduct discovery on the nature of Haber's remediation and the costs it has incurred and will incur.

Caterpillar's final argument, that Haber's Second Amended Complaint fails to plead facts showing the timeliness of the CERCLA cost-recovery claim, may summarily be dealt with, as it contravenes the longstanding principle that "[a] plaintiff is not required to plead elements in his or her complaint that overcome affirmative defenses, such as statute-of-limitations defenses." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018). Dismissal under Rule 12(b)(6) is appropriate only where "the plaintiff affirmatively plead[s]" facts demonstrating that the complaint must fail as untimely. *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014). Caterpillar has not shown that Haber has pleaded itself out of court under the applicable statute of limitations.

All told, Caterpillar's CERCLA pleading arguments are wholly meritless. Haber's Second Amended Complaint suffices to state a CERCLA cost-recovery claim. The Court therefore **DENIES** Caterpillar's Motion to Dismiss as to Haber's CERCLA claims.

## 2. Environmental Legal Action

Caterpillar's last argument is a variation on its CERCLA theme—that Haber has not plausibly alleged facts to state a claim under Indiana's Environmental Legal Action statute ("ELA").  [Filing No. 51 at 13-15.]  Specifically, Caterpillar argues that Haber has not plausibly alleged that Caterpillar caused any contamination or that the contamination poses a risk to health or to the environment.  [Filing No. 51 at 14-15.]

The ELA statute provides:

A person may, regardless of whether the person caused or contributed to the release of a hazardous substance or petroleum into the surface or subsurface soil or groundwater that poses a risk to human health and the environment, bring an environmental legal action against a person that caused or contributed to the release to recover reasonable costs of a removal or remedial action involving the hazardous substances or petroleum.

Ind. Code § 13-30-9-2.  At trial (but not at the pleading stage, of course), Haber will need to demonstrate that Caterpillar was "involved in the alleged release of hazardous substances." *Neal v. Cure*, 937 N.E.2d 1227, 1235 (Ind. Ct. App. 2010) (internal quotations omitted) (affirming grant of summary judgment).  As above, the factual allegations that Caterpillar used PCBs and then deposited them on the land certainly yield the plausible inference that Caterpillar "caused or contributed to the release . . . [of] hazardous substances . . . ."  Ind. Code § 13-30-9-2.

Caterpillar's final argument on the ELA statute, that Haber has not plausibly alleged a risk to health or to the environment, is so formalistic as to border on absurd.  Specifically, Caterpillar submits that Haber's allegation that "IDEM has alleged that [the contaminants] pose a risk to human health and the environment," [Filing No. 122 at 9], reflects a "speculative . . . allegation[]" such that "according to Haber's own pleading, the alleged contamination may not pose any risk at all," [Filing No. 92 at 14].  This creative wordsmithing turns the Rule 12(b)(6) standard on its

head.  The fact that IDEM alleges (and therefore presumably believes) the contamination to pose a risk raises the plausible inference that the contamination in fact does so.[7]

Haber has sufficiently alleged Caterpillar's role in releasing contaminants and that the contamination caused environmental harm, as required to state a claim under the ELA statute.  The Court therefore **DENIES** Caterpillar's Motion to Dismiss Haber's ELA claim.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** Mosey's Motion to Dismiss [42] and **GRANTS IN PART** and **DENIES IN PART** Caterpillar's Motion to Dismiss [50].  Specifically, the Court **GRANTS** Caterpillar's Motion to the extent that it **DISMISSES** Haber's illegal dumping claim (Count V) and TSCA claim (Count VI) as against Caterpillar.  The Court **DENIES** Caterpillar's Motion as to Haber's other claims.  Furthermore, because Caterpillar's Motion to Dismiss Cross-Claims relies solely upon its unavailing argument that Haber has failed to state a CERCLA claim, the Court **DENIES** that Motion [118] as well.

Date: 5/3/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

---

[7] Caterpillar's argument also asks the Court to turn a blind eye to the long-established and universally-accepted toxicity of PCBs which it allegedly released onto Haber's property.  *See, e.g.*, *United States v. NCR Corp.*, 688 F.3d 833, 836 (7th Cir. 2012).  At most, were Haber's allegations at present insufficient (though they are not), the Court would have permitted Haber to amend its complaint to allege what is already universally known about the impact of PCBs on health and the environment.  Such a perplexing exercise is unnecessary given the analysis above.

**Distribution via ECF only to all counsel of record.**